IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : : : | |
| Plaintiff | : : | CIVIL ACTION |
| v. | : : | |
| PAUL M. PRUSKY and STEVEN G. PRUSKY, as Trustees of the MFI Associates, Ltd. Profit Sharing Plan | : : : : : | NO. 04-CV-462 |
| Defendants | : : | |

**MEMORANDUM**

This declaratory judgment action involves a dispute between an insurance company and its insured regarding the parties' relative rights and obligations under a life insurance contract. Steven Prusky purchased a life insurance contract from Prudential Insurance Company of America ("Prudential") that provides an opportunity for insureds to participate in the investment allocation of certain premium payments. He later assigned the contract to his father, Dr. Paul Prusky. When Prudential changed its policy regarding the means by which funds could be reallocated, a dispute arose and Prudential filed this declaratory judgment action.

Defendants counterclaimed for breach of contract and violation of the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. §§ 7001-7006, requesting declaratory relief and monetary damages. Prudential moves to dismiss these claims. For

the reasons set forth below, Plaintiff's motion to dismiss the breach of contract claim and claim for monetary damages is denied. The motion to dismiss the E-Sign Act claim is granted.

## I.    BACKGROUND

In 1997, Steven Prusky purchased a flexible premium survivorship variable universal life insurance contract (the "Contract") from Prudential, which insures the lives of his parents, Dr. Paul and Susan Prusky. He assigned the Contract to his father, Dr. Paul Prusky, who now owns the Contract on behalf of a profit sharing plan. Pursuant to the Contract, premium payments in excess of applicable charges become part of a fund that is invested in one or more of fifteen sub-accounts, the assets of which are invested in an underlying mutual fund. After the initial allocation of funds among the sub-accounts, a contract owner may change that allocation by making transfers. The Contract provides that "[t]o make a transfer, [the contract owner] must ask [Prudential] in a form that meets [Prudential's] needs."

Steven and Paul Prusky engage in an activity commonly referred to as "market-timing"–making frequent transfers among mutual fund investment options in an attempt to take advantage of short term changes in the market. Although Prudential permitted the Pruskys to make daily or near daily transfers by phone or facsimile for the first six years of the Contract, Prudential adopted new transfer policies in December 2003 which limit a contract owner's right to make transfers by phone, fax, or other electronic means to

twenty transfers per calendar year. After the twentieth transfer, all other transfers must be submitted by postal mail on a form that bears an original signature in ink. The stated purpose for such restrictions is "to discourage market timing in variable life insurance market."

In response to a notification regarding the new policies, Dr. Prusky sent a letter on January 6, 2004 to a Prudential employee challenging Prudential's authority to restrict transfers by facsimile. The letter stated: "Should any transfers be rejected, any net gains that would have been achieved will be considered Prudential's responsibility, and we will be resolute in taking any and all actions necessary to recover them." By February 13, 2004, Prusky had made twenty transfers by facsimile. He continues to submit transfer instructions on a daily or near-daily basis. Prudential has refused to accept these transfers.

The parties were engaged in a prior lawsuit involving the same Contract. In that case, Prusky challenged Prudential's decision to change the daily deadline for making transfers–the "Valuation Time"– from 4:15 PM to 4:00 PM, alleging that this change violated the Contract. After a bench trial, the Honorable Berle Schiller issued extensive findings of fact and conclusions of law, ruling in favor of Prudential. Among other things, Judge Schiller found that the Contract was integrated, consisting only of the policy and attached copy of an application, and that the Contract itself did not guarantee a 4:15 PM valuation time. Prusky v. Prudential Insurance Co. of America, 2001 U.S. Dist.

LEXIS 24080, at *66-70 (E.D. Pa. Nov. 1, 2001).  He also considered the Contract negotiations and expressly found that Prudential specifically refused to guarantee that the valuation time would remain unchanged or that transfer requests by facsimile or telephone would be accepted for the life of the Contract.  Id. at *70-75.

The Pruskys filed a Motion for Amendment of Findings of Fact, Conclusions of Law, and Judgment, advancing a new theory of the case based on Judge Schiller's finding that the Contract was integrated and did not provide for a specific valuation time.  Prusky v. Prudential Ins. Co. of America, 2001 U.S. Dist. LEXIS 24189 (E.D. Pa. Dec. 3, 2001).  The court denied the motion.  Id.  On appeal, the Pruskys challenged Judge Schiller's Findings of Fact and Conclusions of Law, as well as the order denying the Motion for Amendment.  In an unpublished opinion, the Third Circuit affirmed the district court's judgment, finding that the Pruskys had waived the right to present a new argument on appeal.  Prusky v. Prudential Ins. Co. of America, 2002 U.S. App. LEXIS 15503 (3d Cir. Aug. 1, 2002).  The court noted:

> Because we find that it is and always has been clear under the express language of the Contract that the Contract consists of only the policy and any attached copy of an application, we cannot accept Prusky's argument.  The Contract plainly states, "This policy and any attached copy of an application, including an application requesting a change, form the entire contract."

Id. at **7.

Prudential seeks declaratory and injunctive relief with respect to the parties' rights

4

and obligations under the Contract. The Pruskys counterclaimed for breach of contract and violation of the E-Sign Act. Prudential filed this motion to dismiss both of the counterclaims.

## II.     Standard for a Motion to Dismiss

The court may grant a motion to dismiss only where "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In deciding a motion to dismiss, the court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

## III.    The Breach of Contract Claim

Prudential argues that the Prusky's breach of contract claim must be dismissed because the Judge Schiller's decision disposes of the claim. Judge Schiller found that the Contract was integrated, the Third Circuit upheld this finding, and that issue may not be re-litigated. However, his fact alone does not dispose of the Pruskys' claim. Judge Schiller did not decide whether the specific provision at issue in this case is unambiguous. I will therefore deny Prudential's motion to dismiss the breach of contract claim.

The doctrine of collateral estoppel, or issue preclusion, "forecloses re-litigation in a later action[] of an issue of fact or law which was actually litigated and which was

necessary to the original judgment." Witowski v. Welch, 173 F.3d 192, 198 (3d Cir. 1999) (citations omitted). The general rule is that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Nat'l Railroad Passenger Corp. v. Pennsylvania Public Utility Commission, 288 F.3d 519 (3d Cir. 2002) (citing Restatement (Second) of Judgments § 27)).  To invoke issue preclusion, it must be established that: "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." Board of Trs. v. Centra, 983 F.2d 495, 505 (3d Cir. 1992).

The parties do not dispute that the parties in both cases are identical or that there was a final judgment on the merits.  The critical question for purposes of resolving this motion is whether the issues in this case are identical and essential to the judgment, and whether the Pruskys had a full and fair opportunity to litigate them.  Although the breach of contract claim in the prior litigation dealt specifically with the valuation time, not the available methods for submitting transfer requests, Judge Schiller decided  many of the same factual questions that are at raised in this case. Among other things, he concluded that the Contract is integrated.  He also determined that the Contract is unambiguous to

the extent that it does not provide a specific valuation time, and therefore, found in favor of Prudential. In the alternative, Judge Schiller found that even if the Contract is ambiguous, Prudential specifically refused to guarantee that the valuation time would remain unchanged or that transfer requests by facsimile or telephone would be accepted for the life of the Contract during the Contract negotiations. He did not, however, specifically consider whether the provision which states that the contract owner must make transfer requests in a "form that meets [Prudential's] needs" was unambiguous. Because Judge Schiller did not decide this question, the Pruskys are not barred by the doctrine of issue preclusion from litigating it before this court.

The Contract provides in relevant part: "To make a transfer, you must ask us in a manner that meets our needs." Complaint, Ex. A, at 14. It does not specify the frequency with which transfers may be effectuated, nor the available means of transmitting transfer requests. The Pruskys contend–and Prudential stipulated in the prior litigation–that "[t]he Contract entitles its owner to transfer amounts between and among the Sub-accounts as often as daily on any day that the New York Stock Exchange is open for business." See Prusky, 2001 U.S. Dist. LEXIS at *16. They further argue that the Contract necessarily permits use of electronic communications, because electronic communications are the only means by which daily transfers can be accomplished. As a general rule, "where the words of [a contract] are unambiguous, the interpretation of the contract must proceed solely from the writing's text." Giampolo v. Somerset Hosp. Ctr. for Health, 1998 U.S.

Dist. LEXIS 14388, at *34 (citing Halpin v. LaSalle, 432 Pa. Super. 55, 628 A.2d 37, 39 (Pa. Super. 1994)). On its face, the provision at issue appears to be unambiguous, giving Prudential complete discretion to define the manner in which transfer requests are to be submitted. Even when a contract seems unambiguous, however, "[t]he course of performance of the parties is always relevant in construing a contract." Prusky, 2001 U.S. Dist. Lexis 24189, at *4 (E.D. Pa. Dec. 3, 2001); see also Bethlehem Steel Corp. v. United States, 270 F.3d 135, 139 (3d Cir. 2001) (noting that under federal contract law, "to decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear....We consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning." (citations omitted)). A court, therefore, may look to the parties' course of conduct to determine whether a contract is ambiguous, Atlantic Richfield Co. v. Razumic, 480 Pa. 366, 390 A.2d 736, 741 n.6 (1978), and/or to resolve an ambiguity. Resolution Trust Corp. v. Urban Redevelopment Auth., 638 A.2d 972, 975 (Pa. 1994). Because the phrase "a form that meets our needs" may be ambiguous, and because at this early stage in the litigation I must construe all facts in favor of the Pruskys, I will deny Prudential's motion to dismiss.

**IV.    The Electronic Signatures in Global and National Commerce Act**

Prusky also contends that Prudential violated and continues to violate the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. §§ 7001-7006 ("E-Sign Act"), by refusing to accept transfers by fax or electronic means.  Because I find that the E-Sign Act does not apply in this case, I do not reach the question of whether there is an implied private right of action under the Act.[1]

In relevant part, the E-Sign Act provides:

> (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and
> (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation.

15 U.S.C. § 7001(a)(1)-(a)(2).  The purpose of the Act is to protect transactions from legal challenges that are solely based on the electronic form of the agreement. As the statute makes clear, the use or acceptance of electronic signatures is not mandatory. Specifically, the E-Sign Act states: "This title does not...require any person to agree to use or accept electronic records or electronic signatures, other than a governmental agency with respect to a record other than a contract to which it is a party." Id. § 7001(b)(2). Therefore, because the E-Sign Act does not require Prudential to accept electronic signatures, Prusky's counterclaim based on this statute must be dismissed.

---

[1] See, e.g., Cable Investments, Inc. v. Woolley, 867 F.2d 151, 154 (3d Cir. 1989) (addressing the substantive right at issue before considering whether there was a private cause of action).

9

**V.     Claim for Monetary Damages**

The Pruskys are seeking both equitable relief and damages for Prudential's alleged breach of contract. Prudential moves to dismiss the claim for monetary damages, alleging that such damages are impermissibly speculative as a matter of law. Prudential cites Prusky v. Aetna Life Insurance and Annuity Co., 2004 U.S. Dist. LEXIS 21597 (E.D. Pa. Oct. 25, 2004), a decision in which Judge Bartle held that a claim for damages was unavailable in a factually similar case. In Aetna, the Pruskys alleged that the defendant insurance company breached a similar flexible premium life insurance contract[2] and violations of Pennsylvania's Unfair Trade by prohibiting them from engaging in market-timing. Judge Bartle concluded that although the Pruskys had suffered harm, "whether or not [they] will suffer any pecuniary damages, and if so how much, is currently a matter of speculation and conjecture." Id. at *18. In contrast to Aetna, which was decided on summary judgment, this case lacks the necessary factual development to support a finding that the claim for monetary damages is impermissibly speculative at this stage in the litigation.

**VI.    Conclusion**

Based on Judge Schiller's determination in the prior lawsuit, and the Third

---

[2] There is, however, one important distinction. The contract at issue in Aetna apparently provided for a "level death benefit," whereas the policy at issue in this case provides for a "potential death benefit." In contrast to a policy that offers a "level death benefit"–which provides for the payment of a fixed insurance amount if the contract remains in force at the time of death–the "potential death benefit" offered under the policy in this case provides for the greater of the fixed insurance amount and "the contract fund before deduction of any monthly charges due on that date, multiplied by the attained age factor." See Pl.'s Complaint, Ex. A, at 6.

Circuit's subsequent approval of that determination, I find that the Pruskys are precluded from re-litigating the question of whether the Contract is integrated.  However, I cannot conclude, given the lack of a factual record at this stage in the litigation, that the specific contractual provision in this case is unambiguous.  For that reason, I will deny Prudential's motion to dismiss the Pruskys' breach of contract claim.  Likewise, because the factual record lacks the necessary development, and in light of the standard for a motion to dismiss, I will not dismiss the Pruskys' claim for monetary damages.  However, because Prudential had no affirmative obligation under the E-Sign Act to accept electronic signatures, Prudential's motion to dismiss that count of the Pruskys' counterclaim is granted.

      An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : : : | |
| Plaintiff | : : | CIVIL ACTION |
| v. | : : | |
| PAUL M. PRUSKY and STEVEN G. PRUSKY, as Trustees of the MFI Associates, Ltd. Profit Sharing Plan | : : : : : | NO. 04-CV-462 |
| Defendants | : | |

**ORDER**

**AND NOW,** this        day of July, 2005, upon consideration of Plaintiff's Motion to Dismiss the Defendant's Counterclaim and Defendants' Response thereto, it is hereby **ORDERED** that:

(1) Plaintiff's Motion to Dismiss Count I of Defendant's Counterclaim (Breach of Contract) is DENIED;

(2) Plaintiff's Motion to Dismiss Count II of Defendant's Counterclaim (Violation of the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. §§ 7001-7006) is GRANTED; and

(3) Plaintiff's Motion to Dismiss Defendants' Claim for Monetary Damages is DENIED.

_____
LAWRENCE F. STENGEL, J.