IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY of AMERICA,       Plaintiff | : <br> :   CIVIL ACTION <br> : <br> : |
| v. | :   NO. 04-462 <br> : |
| PAUL M. PRUSKY, <br> STEVEN G. PRUSKY, <br>       Defendants | : <br> : <br> : |

**M E M O R A N D U M**

**STENGEL, J.**                                                          November    , 2005

      Prudential's motion for partial summary judgment seeks to clarify certain issues in the case. The motion comes after an August 10, 2005, telephone conference with the parties and this court's subsequent order allowing for the motion (Docket # 43). The three contested issues are: 1) whether the parties are bound by Judge Schiller's conclusion in a prior lawsuit that "The Contract" between the parties currently at issue in this case was formed on November 8, 1997, 2) whether the Pruskys are bound by Judge Schiller's conclusion that William Van Pelt, III, and his son William Van Pelt, IV, were agents of the Pruskys for the purposes of creating The Contract, and 3) whether the Pruskys are bound by Judge Schiller's conclusion that the Pruskys knew about a September 18, 1997, letter sent to them by Prudential. I will grant the motion and will consider the three identified issues as settled.

I.      BACKGROUND

In 1997, Steven Prusky purchased a flexible premium survivorship variable universal life insurance contract (the "Contract") from Prudential Insurance Company of America ("Prudential"), which insures the lives of his parents, Dr. Paul and Susan Prusky. He assigned the Contract to his father, Dr. Paul Prusky, who now owns the contract on behalf of a profit sharing plan. Pursuant to the Contract, premium payments in excess of applicable charges become part of a fund that is invested in one or more of fifteen sub-accounts, the assets of which are invested in an underlying mutual fund. After the initial allocation of funds among the sub-accounts, the Contract owner may change that allocation by making transfers. The Contract provides that "[t]o make a transfer, [the contract owner] must ask [Prudential] in a form that meets [Prudential's] needs."

Steven and Paul Prusky engage in an activity commonly referred to as "market-timing"–making frequent transfers among mutual fund investment options in an attempt to take advantage of short term changes in the market. Although Prudential permitted the Pruskys to make daily or near daily transfers by phone or facsimile for the first six years of the Contract, Prudential adopted new transfer policies in December 2003 which limited a contract owner's right to make transfers by phone, fax, or other electronic means to twenty transfers per calendar year. After the twentieth transfer, all other transfers must be submitted by postal mail on a form that bears an original signature in

ink.  The stated purpose for such restrictions is "to discourage market timing in variable life insurance market."

In response to a notification regarding the new policies, Dr. Prusky sent a letter on January 6, 2004 to a Prudential employee challenging Prudential's authority to restrict transfers by facsimile.  The letter stated:  "Should any transfers be rejected, any net gains that would have been achieved will be considered Prudential's responsibility, and we will be resolute in taking any and all actions necessary to recover them."  By February 13, 2004, Prusky had made twenty transfers by facsimile.  He continues to submit transfer instructions on a daily or near-daily basis.  Prudential has refused to accept these transfers.

The parties were engaged in a prior lawsuit (the "Prior Lawsuit") involving the same Contract.  In that suit, Prusky challenged Prudential's decision to change the daily deadline for making transfers–the "Valuation Time"– from 4:15 to 4:00, alleging that this change violated the Contract.  After a bench trial, Judge Schiller issued extensive findings of fact and conclusions of law, ruling in favor of Prudential (the "Prior Decision").  Among other things, Judge Schiller found that the Contract was integrated, consisting only of the policy and attached copy of an application, and that the Contract itself did not guarantee a 4:15 valuation time.  Prusky v. Prudential Insurance Co. of America, 2001 U.S. Dist. LEXIS 24080, at *66-70 (E.D. Pa. 2001).  He also considered the Contract negotiations and expressly found that Prudential specifically refused to

3

guarantee that the valuation time would remain unchanged or that transfer requests by facsimile or telephone would be accepted for the life of the Contract. Id. at *70-75. The Pruskys filed a Motion for Amendment of Findings of Fact, Conclusions of Law, and Judgment, advancing a new theory of the case based on Judge Schiller's finding that the Contract was integrated and did not provide for a specific valuation time. Prusky v. Prudential Ins. Co. of America, 2001 U.S. Dist. LEXIS 24189 (E.D. Pa. Dec. 3, 2001). The court denied the motion. Id. On appeal, the Pruskys challenged Judge Schiller's Findings of Fact and Conclusions of Law, as well as the order denying the Motion for Amendment. In an unpublished opinion, the Third Circuit affirmed the district court's judgment, finding that the Pruskys had waived the right to present a new argument on appeal. Prusky v. Prudential Ins. Co. of America, 2002 U.S. App. LEXIS 15503 (3d Cir. Aug. 1, 2002). The court noted:

> Because we find that it is and always has been clear under the express language of the Contract that the Contract consists of only the policy and any attached copy of an application, we cannot accept Prusky's argument. The Contract plainly states, "This policy and any attached copy of an application, including an application requesting a change, form the entire contract."

Id. at **7.

Now, in an attempt to more fully define the contested issues in this case, and to invoke the doctrine of issue preclusion, Prudential requests through its motion for partial summary judgment a court order clarifying which issues are currently "off the table."  In

particular, Prudential moves this court to order that The Contract between the parties was formed in November of 1997 rather than August or September of that year, that the Van Pelts acted as the Pruskys' agents, and that the Pruskys received a September 18, 1997 letter explaining that Prudential could not guarantee the Pruskys would have the ability to trade using their market-timing method indefinitely.

## II.     STANDARD of REVIEW

Prudential claims its motion for partial summary judgment is pursuant to Fed R. Civ. P. 16(c)(1).  "At any conference under this rule consideration may be given, and the court may take appropriate action, with respect to (1) the formulation and simplification of the issues, including the elimination of frivolous claims or defenses" Id.  The standard of review for its motion is the same as that of a motion for summary judgment pursuant to Fed. R. Civ. P. 56(d).

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted...

Fed. R. Civ. P. 56(d).  Furthermore, the Third Circuit has held Rule 56(d) "empowers the court to withdraw some issues from the case and to specify those facts that really cannot be controverted." Cohen v. Board of Trust, 867 F.2d 1455, 1463 (3d Cir. 1989) (citing 10B Wright, Miller & Kane, Federal Practice and Procedure § 2737, at 312 (3d ed.

1998)). The question to be answered through this motion then is whether Prudential's three named issues cannot be controverted.

## III. DISCUSSION

Prudential argues three issues in this case have already been adjudicated by Judge Schiller's November 1, 2001, extensive Findings of Fact and Conclusions of law (Docket # 90) in the parties' related case, Paul M. Prusky v. Prudential Insurance Company of America, 00-cv-2783, 2001 U.S. Dist. LEXIS 24080 (E.D. Pa. 2001) (Schiller, J.). Prudential argues that the doctrine of issue preclusion applies and prevents the Pruskys from re-litigating those issues already decided. I will analyze the three issues individually.

### 1. The Contract Claim

    A. Was the Contract Between the Parties Formed in November of 1997?

Judge Schiller's third Conclusion of Law begins "The Contract was formed when Steven Prusky accepted the policy (P69/D6) upon delivery on November 8, 1997."[1] Much as the Pruskys attempt to obfuscate or reargue this holding, I do not think it could

---

[1] "The Contract was formed when Steven Prusky accepted the policy (P69/D6) upon delivery on November 8, 1997. The signature page of the application, which is part of the Contract, states in bold letters that the applicant agrees that coverage does not begin until Prudential "issues a contract and I [that is, the insured, Steven Prusky] accept it." Acceptance of the Contract was thus a condition precedent to the Contract taking effect. See Katchmer v. Prudential Ins. Co. of Am., 325 Pa. 69, 188 A. 869, 870 (Pa. 1937) (construing insurance contract provision requiring receipt by the insured to be condition precedent for enforcement of contract); Superka v. Valley Forge Life Ins. Co., 44 Pa. D. & C.4th 92, 99-100 (Ct. Com. Pl. 1999). The parties agree that Steven Prusky did not physically receive the Contract until November 8, 1997." Conclusion of Law # 3

be much clearer.  Judge Schiller reached this conclusion after more than a year of litigation between the parties and a full trial on the merits.  Furthermore, the Third Circuit, although it focused upon whether the Pruskys had waived an argument, did not disrupt Judge Schiller's conclusion.  Prusky v. Prudential Ins. Co. of Am., 44 Fed. Appx. 545, 2002 U.S. App. LEXIS 15503 (3d Cir. 2002).

### B.   Is Judge Schiller's Holding Incontrovertible?

To invoke issue preclusion, Prudential must establish that: "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question."  Board of Trustees of Trucking Employees of New Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 505 (3d Cir. 1992) (citing Temple University v. White, 941 F.2d 201, 212 (3d Cir. 1991), cert. denied, U.S., 112 S. Ct. 873 (1992).  In this case, all four factors are present.  The only argument Prusky poses to prevent issue preclusion on the date of contract formation is that it was neither essential to Judge Schiller's holding nor specifically upheld in the Third Circuit's opinion.  In support of this argument Prusky cites Arab African Int'l Bank v. Epstein, 958 F.2d 532, 535 (3d Cir. 1992) (Third Circuit applied New Jersey law in reversing district court's use of issue preclusion on a reliance issue that the state appellate court did not address) and In re Real Estate Title & Settlement Servs, Antitrust Litig., 869 F.2d 760, 764 (3d Cir. 1989)

(Third Circuit's opinion reversing the district court's decision that it had proper personal jurisdiction over the Arizona school board also included a footnote stating that issue preclusion is only available if the basis for the first court's decision is clear).  In this case the basis for the first court's, Judge Schiller's, decision is clear.  His subsequent analysis of the parties' claims began with the legal conclusion that the parties' contract took effect on November 8, 1997.  That legal conclusion was fully litigated and the Pruskys are precluded from rearguing it.[2]

### 2.     Were the Van Pelts Acting as the Prusky's Agents at the Time of the Contract?

Prudential argues that the issue of whether the Van Pelts were acting as Pruskys' agents at the time of the contract formation is important because any information the agents knew at the time of contracting is imputed to the contract owners.  <u>Kearns v. Minn. Mut. Life Ins. Co.</u>, 75 F. Supp. 2d 413, 422 (E.D. Pa. 1999).  Furthermore, Prudential argues that the issue, similar to the Contract date, has already been litigated and the Pruskys, through their answers to the amended complaint, have admitted the agency relationship. Beginning with whether the issue has already been litigated, Judge Schiller found:

---

[2] Unlike <u>Arab African</u>, in this case the Pruskys are arguing that another district court's determination of when a specific contract was formed should not be given preclusive effect.  No precedent is given for this court to disrupt that district court's specific findings and, although the main purpose of the Third Circuit's opinion on that case was to rule whether an argument had been waived, there is no reason to not give the previous district court's decision preclusive effect.  The formulation date of The Contract was an essential element of the previous suit because it determined what communications between the parties were included within The Contract.  Thus, the parties are precluded from re-litigating that issue here.

> On May 16, 1997, [Paul] Prusky signed a written agreement with the Van Pelts relating to the Van Pelts' identification, negotiation, and acquisition of insurance coverage on the lives of him and his wife. The agreement designated the Van Pelts as the selling broker and delineated certain commission-splitting arrangements. (Stip. Facts 61). The agreement was not specific to activities involving any particular insurance company or companies, but rather applied to any life insurance policies for which the Van Pelts acted as selling broker. Finding of Fact # 91
>
> Rather than believing them to be captive insurance agents of Prudential, the Pruskys knew that the Van Pelts were non-captive agents and worked with a number of different insurance companies. Finding of Fact # 103
>
> The Pruskys engaged the Van Pelts to act as their insurance brokers. Finding of Fact # 105
>
> The conduct of the Pruskys and the Van Pelts confirm that each regarded the Van Pelts as the Pruskys' insurance brokers. Finding of Fact # 108
>
> The Van Pelts negotiated on behalf of the Pruskys, not on behalf of Prudential. Finding of Fact # 109
>
> The Van Pelts did not act as if they had a duty of loyalty to Prudential. Mr. Van Pelt III stated, "In fact, with all that goes on with insurance companies, there is generally -- they look at agents and brokers as being the enemy." Finding of Fact # 113
>
> Where Prudential's and the Pruskys' interests diverged, the Van Pelts consistently advocated in the Pruskys' interest, rather than Prudential's. Finding of Fact # 114

Judge Schiller then concluded:

> The evidence shows the Van Pelts were agents of [Paul] Prusky and Steven Prusky for purposes of negotiation of the Contract. The record clearly establishes that the Pruskys charged the Van Pelts with the task of soliciting information regarding product features from a number on insurance companies, including Prudential, and of reporting back with any

9

information learned. Thus, the Van Pelts' knowledge that Prudential would not promise that the transfer cut-off time would remain at 4:15 p.m. for the life of the Contract must be imputed to [Paul] Prusky and Steven Prusky. Conclusion of Law # 11.

Although the Pruskys argue the Third Circuit did not specifically affirm Judge Schiller's decision regarding the Van Pelts' agency relationship, the fact remains that the issue has already been decided. Judge Schiller specifically found the Van Pelts were Pruskys' agents. The Pruskys had a full and fair opportunity to litigate that issue and are currently precluded from rearguing it.

### 3. Are the Pruskys Precluded From Re-Litigating the Issue of Whether They Received the September 18, 1997 Letter?

In the previous lawsuit the main issue was whether Prudential, consistent with the terms of the contract, could alter the time it processed trade requests from 4:15 pm to 4:00 pm. As part of that lawsuit, evidence was introduced that a letter was sent on September 18, 1997, by Prudential explaining that the specific time of day trades would be processed was not part of the Contract between the parties.[3] Now Prudential moves for a court order explaining that the issue of whether the Pruskys received the letter has already been decided.

Similar to the claims above, Judge Schiller found:

> The Van Pelts sent the original of the September 18, 1997 letter to Steven Prusky. Finding of Fact # 191

---

[3] The letter is important to this case because it also informed the Pruskys that the frequency of their trades would not be guaranteed through the contract.

The Van Pelts discussed the September 16, 1997 and September 18, 1997 letters with Steven Prusky and Dr. Prusky. The Van Pelts had a practice of discussing letters received from Prudential with the Pruskys. Finding of Fact # 192

In September 1997, Steven Prusky or Dr. Prusky received a copy or the original of the September 18, 1997 letter and were aware of its contents. Finding of Fact # 193

As a result, "any information" the Van Pelts, as agents, "knew at the time of the contract's formation is imputed to" Steven Prusky as the Contract owner. Kearns, 75 F. Supp. 2d at 422; see also Rich Maid Kitchens, 641 F. Supp. at 305 ("any information which" the broker "knew at the time of the contract is now imputed to" the contract owner). Prudential notified the Van Pelts on September 15, 1997 that it could not guarantee the transfer time cut-off and followed this up with signed letters on September 16 and September 18. That knowledge is imputed to [Paul] Prusky and Steven Prusky.  Conclusion of Law # 12

In addition to their imputed knowledge, [Paul] Prusky and Steven Prusky had actual knowledge that Prudential would not promise that the transfer time cut-off would remain at 4:15 p.m. for the life of the Contract. Undisputed testimony establishes that Prudential sent the original of the September 18, 1997 letter, which stated that Prudential reserved the right to change the transfer cut-off time for "legal, technological or business reasons," to Van Pelt III. That letter was addressed to Steven Prusky. Van Pelt III's standard practice to is forward originals of letter addressed to a client to that client, and he does not have the original of the September 18, 1997 letter in his files. It was also Van Pelt III's practice to discuss letters like the September 18, 1997 letter with his clients. Therefore, the evidence shows that Steven Prusky and Paul Prusky knew about the September 18, 1997 letter, by receiving it from and/or discussing it with Van Pelt III. Conclusion of Law # 15

The Pruskys argue this issue is irrelevant and should not be decided at this time. They do not, however, deny the preclusive effect of Judge Schiller's decision.  Similar to their arguments regarding the previous issues, the Pruskys contend that the Contract

between the parties was formed in August of 1997 and that any letter received after that date is immaterial. This argument is misplaced. Regardless of whether the letter is relevant, the fact that the Pruskys received the letter has already been adjudicated in a case where the Pruskys fully litigated the issue. The Pruskys are precluded from rearguing that they did not receive the letter.

## IV.  CONCLUSION

Prudential presented this motion for partial summary judgment to clarify which issues have already been adjudicated between the two parties and which remain to be decided. I will grant the motion because Judge Schiller's thorough opinion in a similar case between the parties specifically held that The Contract involved in this case was formed on November 8, 1997, that the Van Pelts acted as the Pruskys' agents for the formation of that contract, and that the Pruskys received a September 18, 1997 letter from Prudential. The necessary requirements for issue preclusion have been met and the issues cannot be controverted in this court. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PRUDENTIAL INSURANCE | : | |
| COMPANY of AMERICA, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | NO. 04-462 |
| | : | |
| PAUL M. PRUSKY, | : | |
| STEVEN G. PRUSKY, | : | |
|     Defendants | : | |

**ORDER**

**STENGEL, J.**

    **AND NOW,** this _____ day of November, 2005, upon consideration of plaintiff's Motion for Partial Summary Judgment (Docket # 45) it is hereby ORDERED that the MOTION is GRANTED. The parties are precluded from re-litigating the following issues:

    1)    The contract between the two parties was formed on November 8, 1997.

    2)    The Van Pelts acted as the Pruskys' agents at the time of the formation of the contract.

    3)    The Pruskys received a letter from Prudential on September 18, 1997.

    BY THE COURT:

    _____
    LAWRENCE F. STENGEL, J.